# OLSON v. McQUEEN.

(139 N. W. 522.)

**Statute of frauds — debts of others.**

1. Where A and two others, B and C, owned a threshing machine in common, and A offered to sell his one-third interest to D, but, before agreeing to such sale, according to a prior agreement that no transfer could be made without the consent of B and C, arranged for a meeting between all the parties, and, at such meeting, A agreed to convey his one-third interest if B, C, and D would do his threshing for two years and credit the purchase price of the one-third interest in the machine on such threshing bills, the promise of B, C, and D was an original promise, and not a promise to answer for the debt, default, or miscarriage of D.

**Statute of frauds — contract not to be performed within year.**

2. Where a contract is capable of full performance by one of the parties thereto within a year from the time of its execution, and has been performed by such party, it is not void within the statute of frauds because not in writing, even though the promise of the other party cannot be performed within that time. Under the facts in evidence, therefore, it having been shown that the defendant, A, fully performed his part of said contract by the delivery of his one-third interest in the said machine at the time of the making of such contract, the mere fact that the threshing was required to be done in two successive years did not bring the contract within the statute of frauds.

Opinion filed December 27, 1912.

Appeal from the District Court for Steele County, *Pollock*, J.

Action to recover for services performed. From the order of the District Court refusing an offer of proof by defendant in support of his counterclaim, and verdict directed for the plaintiff, and judgment thereon, defendant appeals.

Reversed.

Statement by BRUCE, J. Plaintiff and respondent sued to recover a balance of $433.62 and interest, alleged to be owing for threshing done by himself and two others (R. J. Jacobson and William Munyon), and for $6.90 for money paid on account of the defendant, the interest of Jacobson and Munyon having been assigned to the plaintiff before

the trial. Plaintiff alleged and proved that the original bill amounted to $1,156.70, and that defendant had paid thereon the sum of $723.08. This was conceded by both parties. The controversy arises from a counterclaim of $832, or, rather, $416, as $416 thereof was included in the $723.08 admitted by both parties to have been paid. The issues presented and embraced in this counterclaim were presented to the trial court in the form of an offer of proof, which was objected to by the plaintiff on the grounds: (1) "That by such offer defendant sought to establish a contract by which one party, to wit, the plaintiff, is to be held for the debt, default, or miscarriage of another, to wit, said William Munyon, which contract is not in writing, and that in said offer no written contract is offered; (2) that under the offer defendant sought "to enforce certain rights under a contract the terms of which were not to be performed within one year, and which contract was not in writing." The offer was as follows: "That in the fall of the said year 1908, just previous to the threshing season, plaintiff and the said R. J. Jacobson and the said William Munyon and this defendant met at defendant's farm in said Steele county, North Dakota, and entered into an agreement whereby defendant sold and delivered his one-third interest in and to the said threshing machine, engine, and outfit to the said William Munyon for the agreed price of $832, which was then and there mutually agreed upon by and between the aforesaid parties, meaning this plaintiff and defendant and the said R. J. Jacobson and William Munyon, should be paid to this defendant by the said plaintiff and the said R. J. Jacobson and William Munyon as partners and owners of the aforesaid threshing rig, said sum of money to be paid in two equal instalments of the sum of $416 each, and in the manner following, to wit: the plaintiff and said R. J. Jacobson and said William Munyon as partners undertook, promised, and agreed to operate said threshing rig, and to thresh defendant's crop of grain raised and grown on his farm in Steele county, North Dakota, in the proper season of the year 1908 and 1909, and that this defendant in each of said years should have a credit on his threshing account for the sum of $416, or a total amount of $832; that pursuant to said agreement the defendant delivered his interest in said threshing rig to this plaintiff and to the said R. J. Jacobson and William Munyon, and that the said last-named three parties did thresh defendant's grain

in the fall of the year 1908, as alleged in paragraph 1 of plaintiff's complaint, and did credit and allow to this defendant upon said threshing account for the year 1908 the sum of $416 pursuant to the agreement aforesaid; that in the season of the year 1909 defendant raised and grew a crop of grain on his said farm in Steele county, North Dakota, which it was necessary for him to thresh in the proper season of that year, but that the plaintiff and the said Jacobson and William Munyon neglected and refused to thresh the same or any part thereof, though requested and demanded of them by the said defendant so to do at the proper time for threshing the same; and that the defendant was compelled to, and did, engage and cause others to do and perform his threshing in the fall of the year 1909, which plaintiff and the said Jacobson and Munyon had agreed to do and perform pursuant to said agreement; and that the plaintiff and the said R. J. Jacobson and William Munyon, or any of them, have never paid the defendant the said sum of $416 in threshing as agreed, or otherwise or in any manner whatsoever, and that there is now due and owing to the defendant from the said plaintiff and the said R. J. Jacobson and William Munyon jointly and severally the sum of $416, with interest thereon at 7 per cent per annum from and since the 1st day of November, 1909, which is claimed as an offset and counterclaim to plaintiff's cause of action; that since the making of the said agreement between said plaintiff and this defendant and the said William Munyon and R. J. Jacobson, and since the delivery of said threshing machine and outfit to said William Munyon, R. J. Jacobson, and plaintiff, Martin Olson, the said Munyon and Jacobson have had open and continuous possession of said threshing machine and outfit."

It was elsewhere proved upon the trial that defendant, McQueen, and Jacobson and Olson had an agreement to the effect that no one of the three parties should sell his interest in the machine without the consent of the others; that defendant had refused to make any binding agreement for the sale of such machine to Munyon until he had first obtained such consent, and that a meeting of all of the parties was arranged for in order that this consent might be obtained. It was proved that it was at this meeting that the sale of the one-third interest in the machine was actually consummated, and that the agreement that Jacobson, Olson, and Munyon should do the threshing for two

seasons for the defendant, and that the defendant should credit the bills therefor upon the purchase price of the machine, was made.

The trial court denied the offer of proof and rejected evidence generally in support of such counterclaim, and directed a verdict for the plaintiff for the sum of $440.52, the amount sued for. Defendant appeals.

*C. S. Shippy,* for appellant.
*W. J. Courtney,* for respondent.

BRUCE, J. (after stating the facts as above). The first point for determination is whether the agreement for the sale of the one-third interest of the defendant, McQueen, in the threshing machine in question for the agreed price of $832, created an original contract of the said McQueen, Jacobson, and Munyon to pay for the same, or merely a promise on the part of the three to answer for the debt, default, or miscarriage of another (Munyon), within the meaning of the statute of frauds, it being remembered that that other was one of their own number. We are also to determine whether the agreement was incapable of being performed within a year, so as to come within the statute of frauds.

It seems to be well established by the authorities that where a sale of goods is made upon the joint credit and promise of three persons, though the property is furnished and delivered to but one of them, the legal effect as between them and the vendor is a sale to them jointly, and that such a promise is an original one, and not within the statute of frauds. Smith, Frauds, § 331; 20 Cyc. 184; Boyce v. Murphy, 91 Ind. 1, 46 Am. Rep. 567; Gibbs v. Blanchard, 15 Mich. 292. In order, indeed, that the promise shall be considered a promise to answer for the debt or miscarriage of another, it must be collateral to some other or prior promise. The statute does not extend to a joint understanding of two or three persons for the benefit of one of them, unless such one was indebted or had promised before the joint understanding had been arrived at. 29 Am. & Eng. Enc. Law, 924; Street, Foundations of Legal Liability, 186; 1 Brandt, Suretyship & Guaranty, p. 183. Applying these tests, we are satisfied that the offer of proof presented an original promise, and not one that was collateral and within the stat-

ute.   The mere fact that in it counsel for defendant stated that the interest in the machine was "sold and delivered to William Munyon" is in no way conclusive, as these words are controlled by the remainder of the offer, which states positively that the sale or delivery was a part of a joint agreement.   The offer, in fact, specifically states that "said William Munyon and this defendant met at defendant's farm in Steele county, and entered into an agreement, whereby defendant sold and delivered his one-third interest in and to said threshing machine to the said William Munyon for the agreed price of $832, which it was 'then and there' agreed upon by and between the aforesaid parties, meaning this plaintiff and the defendant and the said R. J. Jacobson and William Munyon, should be paid to this defendant *by the said plaintiff and the said R. J. Jacobson and William Munyon as partners and owners of the aforesaid threshing rig. . . . That pursuant to said agreement the defendant delivered his said interest in said threshing rig to this plaintiff and to the said R. J. Jacobson and William Munyon,* and that the last three parties did thresh defendant's grain in the fall of 1908."   This offer of proof clearly intimates an original, and not a collateral, agreement.   We think the court erred in rejecting the offer, and that it also erred in refusing to allow the plaintiff to answer, on cross-examination, the following questions, which were objected to on the ground that they sought to disclose a contract which, if made, was required to be in writing:   These questions were: "Didn't Mr. McQueen, at the time you four people were together, tell you and Mr. Jacobson that he would not sell the rig to Munyon unless all three of you people would agree and thresh for him in these two falls of 1908 and 1909 ?"   And, "Didn't you and Mr. Jacobson agree then that if Mr. McQueen would sell his one-third interest to Munyon, to do his threshing for him in the fall of 1908 and 1909 ?"   "And on the strength of the agreement that you had made there, didn't Mr. McQueen deliver his one-third interest in the rig to Mr. Munyon ?"

The whole question at issue was whether the promise of the three, Olson, Munyon, and Jacobson was an original or a collateral one.   The questions excluded were certainly directed to this point of inquiry, and were both competent and material.

But counsel for respondent argues that, in order to reverse the judgment, this court must presume a joint liability of Munyon, Olson,

and Jacobson, and that defendant and appellant now seeks to counter-claim this joint liability against but one of the three parties, Olson, who is the sole plaintiff in the suit. He contends that, by so doing, defendant seeks, in one breath to call the liability joint and joint and several. We do not deem this to be material. The question is not so much as to whether the liability of Munyon and Jacobson and Olson was a joint and several liability, but whether it was an original one. 20 Cyc. 184. But even if it were considered to be joint, and not joint and several, we do not believe that the objection would be valid. Plaintiff sues in this case under the Code, and as the real party in interest. That is to say, as the assignee of a claim held originally by himself and two others. At the common law he would have been compelled to bring the action in the names of his assignors, and if he had done so the right to the counterclaim for damages arising from the joint default in the contract would have been unquestionable. In cases where the assignee sues under the Code as the real party in interest, he assumes the obligations as well as the claims of his assignors. This is too clear for argument. It is quite possible that the defendant need not have counterclaimed at all. He might, no doubt, have allowed a judgment to be recovered against him for the balance claimed to be due upon the threshing bill for 1908, and then, in a separate action, have sued the three original promisors for the failure to do the threshing in the year 1909; but he did not, and was not required to do so. We think that the counterclaim was properly interposed. Rev. Stat. 1905, § 6808; 34 Cyc. 746, 777.

Nor do we believe that the contract was within the statute of frauds, because by its terms it was not to be performed within one year from the making thereof. It is conceded, indeed, that it was fully executed, on one side, by the delivery of the interest in the machine. According to the overwhelming weight of authority, the statute has no application in such cases; and though a few states hold to the contrary, we prefer to follow the majority and almost universal holding. 29 Am. & Eng. Enc. Law, 835, and cases cited.

The judgment of the District Court is reversed, and the cause is remanded for a new trial.